IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I-ENTERPRISE COMPANY LLC, | No. C-03-1561 MMC |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF APRIL 4, 2005 ORDER DISQUALIFYING PLAINTIFF'S COUNSEL; VACATING HEARING** |
| v. | |
| DRAPER FISHER JURVETSON MANAGEMENT COMPANY V, LLC, et al., | |
| Defendants | (Docket No. 319) |

Before the Court is the motion, filed April 15, 2005 by plaintiff I-Enterprise Company LLC ("I-Enterprise"), seeking reconsideration of the Court's April 4, 2005 order disqualifying I-Enterprise's counsel, DLA Piper Rudnick Gray Cary US LLP ("DLA Piper"). Defendants Draper Fisher Jurvetson Management Company V, LLC, Draper Fisher Jurvetson Management Co. VI, LLC, Timothy C. Draper, John H.N. Fisher, and Stephen T. Jurvetson (collectively, "DFJ") have filed opposition to the motion, to which I-Enterprise has replied. Having considered the papers submitted in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the May 20, 2005 hearing. For the reasons set forth below, plaintiff's motion is DENIED.

/ /

## BACKGROUND

The factual and legal basis for the Court's April 4, 2005 disqualification order is set forth in detail in that order and will not be repeated here. After the filing of the disqualification order, the Court granted plaintiff's request to file a motion for reconsideration solely on the issue of whether "defendants delayed so long in moving to disqualify DLA Piper that their motion to disqualify should have been denied." See Order Granting Plaintiff's Motion to File Motion for Reconsideration of Order Disqualifying Plaintiff's Counsel, filed April 8, 2005, at 1.

## LEGAL STANDARD

"'It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right.'" See River West, Inc. v. Nickel, 188 Cal. App. 3d 1297, 1309 (1987) (quoting Trust Corp of Montana v. Piper Aircraft Corp., 701 F.2d 85, 87 (9th Cir. 1983)). A motion to disqualify may be denied if there is "evidence of an unreasonable delay by the former client in making the motion and resulting prejudice to the current client." See id.

Once the party opposing disqualification submits evidence of unreasonable delay, the burden shifts back to the moving party to justify the delay, see id., at which point the moving party "should address: (1) how long it has known of the potential conflict; (2) whether it has been represented by counsel since it has known of the potential conflict; (3) whether anyone prevented the moving party from making the motion earlier, and if so, under what circumstances; and (4) whether an earlier motion to disqualify would have been inappropriate or futile and why." See id. "With convincing evidence that the delay was inexcusable and the present client will suffer prejudice, the court may find the former client has waived any right to disqualify counsel[.]" Id. at 1310.

The California Court of Appeal nevertheless has cautioned that:

> "mere delay" in making a disqualification motion is not dispositive. The delay must be extreme in terms of time and consequence. Thus the court must initially determine when the former client became aware of the attorney's

potential conflict.  Whether there was diligence in making the motion for disqualification depends upon establishing that knowledge.

Id. at 1311.

## DISCUSSION

As set forth in detail in the Court's April 4, 2005 disqualification order, David Young ("Young"), a former partner in the law firm of Manatt, Phelps & Phillips LLP ("Manatt"), the law firm representing defendants in this litigation, billed one-half hour of time on the instant litigation, and billed more than 200 additional hours of work for DFJ, including work on issues that are relevant to the instant litigation.  In August 2004, Young left Manatt and joined the firm of Gray Cary Ware and Freidenrich LLP ("Gray Cary.")  On January 1, 2005, Gray Cary merged with Piper Rudnick LLP ("Piper Rudnick"), the firm that had been representing I-Enterprise in this litigation, to form the new firm of DLA Piper.  Thus, since January 1, 2005, Young has been a member of the law firm representing I-Enterprise.  The dispute raised by the instant motion centers on the time at which defendants first became aware of the conflict that arose when Young became a member of DLA Piper.

Young attests that he personally discussed his decision to join Gray Cary, during the week he made that decision, with at least 30 Manatt attorneys, including Hale Boggs ("Boggs"), the "primary relationship attorney for DFJ," and Eugene Hahm, one of the Manatt attorneys responsible for the instant litigation.  (See Young Decl. ¶¶ 3-4, 6, 15.) Young further attests that he sent an email on September 27, 2004 to various persons at DFJ, including Raj Atluru ("Atluru"), Mark Greenstein ("Greenstein"), Frank Creer, David Cremin, Mel Davidson and Scott Lenet, in which he discussed his move to Gray Cary. (See id. ¶ 7 and Ex. C.)

In late October 2004, Gray Cary's then-upcoming merger with Piper Rudnick was announced and reported widely in the press.  (See Bustamante Decl. ¶ 8 and Ex. D.)  On December 21, 2004, according to Young, he sent a broadcast email to the above-referenced DFJ personnel, as well as Rose Yip, Paolo de Rezende, and Jennifer Fonstad ("Fonstad") of DFJ, announcing Gray Cary's merger with Piper Rudnick.  (See id. ¶ 9 and

Ex. E.) On December 21 and 22, 2004, Young attests, he exchanged emails with Boggs, and two other Manatt partners not involved in the instant litigation, about the merger. (See id. ¶¶ 10-12 and Exs. F-H.)

Greenstein, Atluru, and Fonstad attest that they have no recollection of receiving Young's emails. (See Greenstein Decl. ¶¶ 7-9; Atluru Decl. ¶¶ 7-9; Fonstad Decl. ¶¶ 7-9.) Each further attests that, prior to February 18, 2005, he or she was not aware of any grounds for a motion to disqualify I-Enterprise's counsel. (See Greenstein Decl. ¶ 11; Atluru Decl. ¶ 11; Fonstad Decl. ¶ 11.) Greenstein, DFJ's Director and Chief Financial Officer, further attests that Frank Creer, David Cremin, Mel Davidson, Scott Lenet, and Paolo De Rezende work for DFJ affiliate funds that are not parties to the instant litigation. (See Greenstein Decl. ¶¶ 12-16.) According to Greenstein, Rose Yip is a controller at DFJ who reports to him. (See id. ¶ 17.) Greenstein attests that when he spoke to her, she confirmed that she was unaware of any grounds for a motion to disqualify until February 18, 2005. (See id.)

On February 16, 2005, Young and Boggs had lunch together, at Young's invitation. (See Boggs Decl. ¶ 8.) According to Boggs, Young suggested that Boggs should consider joining DLA Piper. (See id. ¶ 9.) Boggs attests that Young told him that Gray Cary had decided to merge with DLA Piper because of the low percentage of conflicts of interest created by the merger for Gray Cary's clients. (See id.) Boggs attests that Young's suggestion that he join DLA Piper, combined with Young's discussion of conflicts of interest, caused him to consider for the first time the conflicts that would be posed to DFJ if, hypothetically, Boggs were to join DLA Piper. (See id.) Boggs further attests that, prior to his February 16 lunch with Young, he had no occasion to consider, and did not consider, the conflict posed by DLA Piper's representation of I-Enterprise in the instant litigation. (See id.) Boggs attests that it did not occur to him before that date that DLA Piper's rapid expansion had any relevance to his practice. (See id.) After his February 16 lunch with Young, Boggs attests, he immediately informed Ronald Katz ("Katz"), lead counsel for defendants in the instant litigation, of DLA Piper's potential conflict. (See id. ¶ 11.)

4

On March 2, 2005, defendants filed a motion to disqualify DLA Piper from representing I-Enterprise in this litigation. On that date, Young attests, Boggs left Young a voice mail message informing him that the motion had been filed and that he was informing Young about the motion as a courtesy, due to their professional and personal relationship. (See Young Decl. ¶ 13.) According to Young, Boggs stated that he had been aware of the possibility of the motion being filed when he and Young had lunch together on February 16, 2005, but that due to confidentiality considerations he was unable to mention it to Young at that time. (See id. ¶ 13.) Young attests that he does not have a copy of Boggs' voicemail message because he routinely deletes all voicemail messages immediately after listening to them. (See Young Decl., filed May 9, 2005, ¶ 2.)[1]

Boggs acknowledges that he left a voice mail message for Young on March 2, 2005, but disputes Young's characterization of the substance of that message. (See Boggs Decl. ¶ 7.) Boggs attests that although he cannot recall the precise words he used, he is certain that he did not tell Young that he was aware, as of the date of their February 16 lunch, of the possibility that a motion for disqualification would be filed, because prior to that date, he was not aware of any grounds for a motion to disqualify I-Enterprise's counsel, had not given any consideration to the filing of such a motion, and was not aware of the possibility that such a motion could be filed. (See id. ¶¶ 7-8, 10.) Boggs also attests that he had no reason to believe that anyone else at Manatt had engaged in internal discussions regarding a motion to disqualify and that if he had been aware of any such discussion, he would not have accepted Young's lunch invitation. (See id. ¶ 8.)

Boggs does recall telling Young, in his March 2, 2005 voice mail message, that he would have told him about Manatt's decision to file the motion as soon as that decision had been made, but that he could not do so because of his professional responsibilities to DFJ. (See id. ¶ 11.) According to Boggs, the delay in informing Young to which Boggs was

---

[1] Defendants object to the admissibility of certain of Young's statements, including his characterization of the content of Boggs' voice mail message. The Court does not reach defendants' objections because, as set forth below, Young's statements do not affect the ultimate outcome of plaintiff's motion.

5

referring was the period between the time Manatt and DFJ decided to file the disqualification motion, which he attests was after February 18, and the date the motion was filed, March 2, 2005.  (See id. ¶¶ 11, 13.)

Katz similarly attests that, prior to February 18, 2005, he was not aware of any grounds for a motion to disqualify I-Enterprise's counsel, had not given any consideration to the filing of such a motion, and was not aware of the possibility of such a motion being filed. (See Katz Decl. ¶ 3.)  Katz attests that he was not aware, at any time prior to February 18, 2005, that Young had joined DLA Piper.  (See id. ¶ 4.)  Katz further attests that, on February 18, 2005, he first considered the possibility of filing a motion to disqualify, and that between February 18 and March 2, 2005, "Manatt's litigation team (1) investigated the nature of . . . Young's work for DFJ; (2) evaluated all potential bases for disqualification of [I-Enterprise's] counsel under the applicable case law; and (3) prepared the disqualification motion papers."  (See id. ¶ 6.)  Christopher L. Wanger, Eugene Hahm, and Jeffrey J. Lokey, defendants' other litigation counsel in this action, similarly attest that they were unaware of Young's move to DLA Piper until February 18, 2005, and that they had never considered the possibility of filing a motion to disqualify I-Enterprise's counsel until that date.  (See Wanger Decl. ¶¶ 3-5; Hahm Decl. ¶¶ 3-5; Lokey Decl. ¶¶ 3-5.)

I-Enterprise argues that the evidence summarized above demonstrates that DFJ and its counsel must have known that Young had joined DLA Piper because they knew Young had left Manatt to join Gray Cary, and they were aware that Gray Cary had merged with DLA Piper.  Thus, I-Enterprise concludes, defendants knew of the conflict and unreasonably delayed by waiting more than two months after the merger took place to file their disqualification motion.[2]

Under California law, delay in filing a motion to disqualify is measured from the date

---

[2] Until the merger between Gray Cary and Piper Rudnick actually took effect, the merger could have been postponed or abandoned, or Young could have decided not to join the new firm, and, in either event, no conflict would have existed.  Thus, the earliest date on which defendants could have moved to disqualify I-Enterprise's counsel was January 1, 2005.  The disqualification motion was filed roughly two months later, on March 2, 2005.

6

the moving party actually perceives the conflict, not the date it first obtains the facts from which an inference of conflict could be drawn.  See Western Continental Operating Co. v. Natural Gas Corp. of California, 212 Cal. App. 3d 752, 764 (1989) (disregarding period during which general counsel was aware of facts constituting conflict, where such counsel attested that conflict was "not fully considered" until outside counsel retained eleven months later, at which point outside counsel discovered conflict); see also Paul E. Iacono Structural Engineer, Inc. v. Humphrey, 722 F.2d 435, 443 n.11 (9th Cir. 1983) (measuring delay from date moving party's counsel "took note" of appearance of disqualifying attorney's name on opposing counsel's letterhead, although name first appeared on letterhead six months earlier).

      Here, the evidence is largely undisputed that no one at DFJ or at Manatt actually became aware of the potential conflict until February 16, 2005.  The only evidence arguably to the contrary is Young's declaration that Boggs left him a voice mail message on March 2, 2005, notifying him of the disqualification motion and apologizing for not letting him know about the motion earlier.  (See Young Decl. ¶ 13.)  As Young recalls the message, Boggs was aware of a potential disqualification motion before Boggs and Young had lunch on February 16, 2005.  Young does not purport to quote Boggs' exact words, however, and, as Boggs explains, he was referring to the period between February 18, 2005 and the date the motion was filed, not to any earlier time period.  Further, to the extent I-Enterprise argues DFJ and its counsel must have been aware of the conflict earlier, the Court notes I-Enterprise and its counsel apparently failed to recognize the existence of such conflict until after DFJ filed its motion, at which point counsel for I-Enterprise took steps to screen Young from the litigation.

      Accordingly, the Court finds DFJ and its counsel were first cognizant of the conflict just two weeks before DFJ filed its motion to disqualify, and, consequently, there was no "extreme" delay, see River West, 188 Cal. App. 3d at 1311, such as would justify denial of

the disqualification motion.[3]

## CONCLUSION

For the reasons set forth above,

1. Plaintiffs' motion for reconsideration is hereby DENIED.

2. The parties shall appear before the Court for a case management conference on June 10, 2005 at 10:30 a.m., as previously scheduled, and shall file a joint case management statement no later than June 3, 2005.

This order terminates Docket No. 319.

**IT IS SO ORDERED.**

Dated: May 17, 2005

/s/ Maxine M. Chesney
MAXINE M. CHESNEY
United States District Judge

---

[3] As noted, the period of delay cannot, under any circumstances, exceed two months. Although the Court, in light of the above finding, need not address the question of whether a delay of two months close to the time of trial would justify denial of disqualification, the Court observes that, generally, delays of similar length have been found insufficiently "extreme" to warrant a finding that defendants waived their right to seek disqualification. Compare, e.g., Western Continental, 212 Cal. App. 3d at 764 (holding two months delay after actual knowledge of conflict not unreasonable); Widger v. Owens-Corning Fiberglas Corp. (In re Complex Asbestos Litigation), 232 Cal. App. 3d 572, 599-600 (1991) (affirming disqualification where moving party was aware of conflict as much as five months before filing motion for disqualification on "eve of trial"); Paul E. Iacono Structural Engineer, Inc. v. Humphrey, 722 F.2d at 443 (finding six-week delay in filing motion for disqualification reasonable); with River West, 188 Cal. App. 3d at 1311 (finding implied waiver of conflict where moving party waited three years to file motion after obtaining actual knowledge of conflict); Trust Corp., 701 F.2d at 87-88 (finding implied waiver of conflict where moving party waited two and a half years after obtaining actual knowledge of conflict).

8