**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

I-ENTERPRISE COMPANY LLC,

        Plaintiffs,

  v.

DRAPER FISHER JURVETSON
MANAGEMENT COMPANY V, LLC, et al.,

        Defendants

                         /

No. C-03-1561 MMC

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS CERTAIN
COUNTS OF THIRD AMENDED
COMPLAINT AND/OR TO STRIKE;
VACATING HEARING**

(Docket No. 329)

      Before the Court is defendants' motion, filed April 25, 2005, to dismiss certain

counts, or parts thereof, of plaintiff I-Enterprise Company LLC's ("I-Enterprise") Third

Amended Complaint and to strike part of the prayer for relief, pursuant to Rules 12(b)(6)

and 12(f) of the Federal Rules of Civil Procedure.  I-Enterprise has filed opposition to the

motion, to which defendants have replied.  Having considered the papers submitted in

support of and in opposition to the motion, the Court finds the matter appropriate for

decision without oral argument, <u>see</u> Civil L.R. 7-1(b), and hereby VACATES the July 22,

2005 hearing.  For the reasons set forth below, the motion is GRANTED in part and

DENIED in part.

/ /

**BACKGROUND**

In 1998 and 1999, I-Enterprise, through its predecessors-in-interest, invested in two venture capital funds, Draper Fisher Jurvetson Fund V L.P. ("Fund V") and Draper Fisher Jurvetson Fund VI L.P. ("Fund VI").  (See Third Amended Complaint ("TAC") ¶¶ 1, 4.) I-Enterprise alleges that it has suffered more than $40 million in damages as a result of defendants' fraudulent and negligent misrepresentations, breach of contract, breach of fiduciary duty, state securities law violations, unfair business practices, conversion, and unjust enrichment.  (See id. ¶¶ 1, 3.)

Defendant Draper Fisher Jurvetson Management Company V, LLC ("DFJ-V") is the general partner of Fund V.  (See id. ¶ 5.)  Defendant Draper Fisher Jurvetson Management Company VI, LLC ("DFJ-VI") is the general partner of Fund VI.  (See id. ¶ 6.)  Defendants Timothy C. Draper ("Draper"), John H.N. Fisher ("Fisher"), and Stephen T. Jurvetson ("Jurvetson") (collectively, the "individual defendants") are managing directors of DFJ-V and DFJ-VI.  (See id. ¶¶ 7-9.)  The individual defendants are also general partners in the Draper Fisher Jurvetson general partnership ("DFJ").  (See id.)

On December 15, 2004, the Court granted in part and denied in part defendants' motion for partial judgment on the pleadings as to I-Enterprise's Second Amended Counterclaim.[1]  In particular, the Court found that with limited exceptions, as set forth infra, all of I-Enterprise's claims based on the following allegations were derivative claims that were required to be brought on behalf of Fund V or Fund VI, the partnerships in which I-Enterprise is a limited partner, and could not be brought by I-Enterprise on its own behalf: (1) failure to make the requisite capital contributions to the partnerships; (2) failure to adhere to the investment objectives set forth in the Offering Memoranda; (3) misallocations of profits, losses, and securities; (4) failure to devote appropriate time to management of the funds, and (5) conflict of interest and self-dealing.  See Order Granting in Part and

---

[1] Pursuant to stipulation, the parties were realigned on January 28, 2005.  (See Docket No. 191.)  I-Enterprise is now the plaintiff; DFJ-V, DFJ-VI, Draper, Fisher, and Jurvetson are now defendants.  (See id.)

1   Denying in Part Counterdefendants' Motion for Partial Judgment on the Pleadings or, in the

2   Alternative, for Summary Adjudication, filed December 15, 2004, at 3-4, 21 ("December 15

3   Order").  The Court granted defendants' motion for judgment on the pleadings as to all

4   claims based on such allegations, with the exception of I-Enterprise's claims for negligent

5   misrepresentation, fraud, violation of Massachusetts Blue Sky laws, and for an accounting.

6   See id.  The Court denied defendants' motion as to claims based on the following

7   allegations: (1) failure to distribute securities to I-Enterprise; and (2) failure to provide notice

8   to I-Enterprise when the individual counterdefendants ceased being active in the

9   management of the funds.  See id. at 21.

10      On February 24, 2005, I-Enterprise filed a motion for leave to file a Third Amended

11  Complaint.  The proposed amendments fell into two categories.  First, I-Enterprise sought

12  to amend its pleading to recharacterize certain of the dismissed derivative claims as

13  individual claims, based on defendants' failure to provide notice to I-Enterprise of

14  defendants' alleged wrongdoing, in violation of the limited partnership agreements.

15  Second, I-Enterprise sought to amend its pleading to allege additional misrepresentations

16  by defendants, which, I-Enterprise contended, first came to light during discovery.

17      On April 4, 2005, the Court granted the motion; I-Enterprise's Third Amended

18  Complaint was filed that same date.  Defendants filed the instant motion on April 25, 2005.[2]

19                          **LEGAL STANDARDS**

20      **A.  Motion to Dismiss**

21      A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears

22  beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

23  entitle him to relief."  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Dismissal can be

24  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

25  under a cognizable legal theory.  See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699

26  

27      [2] On April 4, 2005, the Court granted defendants' motion to disqualify I-Enterprise's

28  counsel.  As a result, the hearing on the instant motion was noticed for hearing July 22,
    2005, to allow time for I-Enterprise to obtain new counsel.

1   (9th Cir. 1990).

2       Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any

3   material beyond the pleadings.  See Hal Roach Studios, Inc. v. Richard Feiner And Co.,

4   Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  Material that is properly submitted as part

5   of the complaint, however, may be considered.  See id.  Documents whose contents are

6   alleged in the complaint, and whose authenticity no party questions, but which are not

7   physically attached to the pleading, also may be considered.  See Branch v. Tunnell, 14

8   F.3d 449, 454 (9th Cir. 1994).  In addition, the Court may consider any document "the

9   authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

10  relies," regardless of whether the document is referred to in the complaint.  See Parrino v.

11  FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).  Finally, the Court may consider matters that

12  are subject to judicial notice.  See Mack v. South Bay Beer Distributors, Inc., 798 F.2d

13  1279, 1282 (9th Cir. 1986).

14      In analyzing a motion to dismiss, the Court must accept as true all material

15  allegations in the complaint, and construe them in the light most favorable to the

16  nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

17  The Court may disregard factual allegations if such allegations are contradicted by the facts

18  established by reference to exhibits attached to the complaint.  See Durning v. First Boston

19  Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  Conclusory allegations, unsupported by the

20  facts alleged, need not be accepted as true.  See Holden v. Hagopian, 978 F.2d 1115,

21  1121 (9th Cir. 1992).

22      **B.  Motion to Strike**

23      Rule 12(f) of the Federal Rules of Civil Procedure authorizes the Court to "order

24  stricken from any pleading any insufficient defense or any redundant, immaterial,

25  impertinent, or scandalous matter."  See Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f)

26  motion to strike is to avoid the expenditure of time and money that must arise from litigating

27  spurious issues by dispensing with those issues prior to trial. . . ."  Fantasy, Inc. v. Fogerty,

28  984 F.2d 1524, 1527 (9th Cir. 1993) (citation omitted), rev. on other grounds, 510 U.S. 517

4

(1994).

## DISCUSSION

### A. Claims Based on Failure to Notify Limited Partners of "Detrimental Acts"

The limited partnership agreements for Fund V and Fund VI require the General Partner to provide written notice to the limited partners if any of the individual defendants do not remain active in the management of the funds or if "the General Partner or any of its Managing Members has committed a Detrimental Act."  (See TAC ¶ 26; see also Ramani Decl. Ex. C (Fund V Limited Partnership Agreement) at 25 § 14.9(b) and Ex. C (Fund VI Limited Partnership Agreement) at 28 § 14.9(b).)[3]  The limited partnership agreements further provide for termination of the funds if two-thirds of the limited partners vote to terminate the partnership within 90 days of receiving such written notice from the General Partner.  (See id.)  The limited partnership agreements define "Detrimental Act" as "(i) actual fraud or willful misconduct which directly causes a material adverse effect to the Partnership or its assets or (ii) being convicted of a felony or of securities fraud or embezzlement."  (See id. (Fund V Limited Partnership Agreement) at 13 § 8.4(a) and (Fund VI Limited Partnership Agreement) at 15 § 8.4(a).)

I-Enterprise has amended its complaint to allege that the Funds' General Partners breached their duty to provide written notice of the following alleged "Detrimental Acts":

1.  Distribution of Cyras stock to the Fund V General Partner, even though the stock was not a distributable marketable security of which the General Partner was entitled to take a share;

2.  Engaging in conflict of interest and self-dealing transactions, including personal transactions involving shares of portfolio company stock, misappropriation of partnership opportunities and assets, and investing in affiliate companies without the requisite consent.

3.  Failure to dedicate appropriate time to effectively manage the affairs of the partnership, and agreeing to dedicate 100% of their time to funds other than Funds V and

---

[3] Both Limited Partnership Agreements are attached to the Ramani Declaration as Exhibit C.

5

1   VI barely a year into the ten-year term of Fund VI.

2          4.  Failure to make any of the required capital contributions to the funds.

3          5.  Instead of returning to the limited partners capital previously reserved for follow-

4   on investments in portfolio companies that had failed, embarking on a "recovery program"

5   to reinvest that money with changed investment objectives and in conflict with investments

6   being made at the same time by Fund VII.

7          6.  Failing to follow the valuation procedures required by the Fund V Agreement.

8   (See TAC ¶¶ 150-162.)

9          I-Enterprise alleges that defendants' failure to give the required written notice of

10  these acts "deprived it of the opportunity in response, among other things (a) to withhold

11  further capital contributions on account of such material contract breaches; (b) to sell its

12  limited partnership interest in Fund V or VI; (c) to seek judicial dissolution of the

13  Partnerships; or (d) to obtain a vote of two-thirds in interest of the limited partners to

14  terminate the Partnerships."  (See TAC ¶ 162.)

15                **1.  Direct or Derivative?**

16         Defendants' first argument for dismissal is that the Court has already held that any

17  claims based on "Detrimental Acts" must be brought as derivative claims and may not be

18  asserted by I-Enterprise individually.  As noted, in the Court's December 15, 2005 order,

19  the Court granted judgment on the pleadings in favor of defendants with respect to

20  I-Enterprise's claims for damages based on "(1) failure to make the requisite capital

21  contributions to the partnerships, (2) failure to adhere to the investment objectives set forth

22  in the Offering Memoranda, (3) misallocations of profits, losses, and securities, (4) failure to

23  devote appropriate time to management of the funds, and (5) conflict of interest and self-

24  dealing," on the ground that "[a]ll such claims must be brought as derivative claims and

25  may not be asserted by I-Enterprise individually."  (See December 15 Order at 19-20.)  The

26  Court denied judgment on the pleadings, however, with respect to I-Enterprise's claim that

27  defendants failed to provide the requisite notice that the individual defendants ceased being

28  active in the management of the funds, in violation of § 14.9 of the limited partnership

                                          6

agreements, finding that such allegation stated a direct claim.  (See id. at 17-18.)

I-Enterprise's new claims for failure to provide the requisite notice of alleged Detrimental

Acts, in violation of § 14.9 of the limited partnership agreements, similarly state direct, not

derivative, claims, for the reasons set forth in the December 15 Order.  (See id. at 10-11,

17-18.)

        As the Court noted therein, a derivative suit, under California law, "seeks to recover

for the benefit of the corporation and its whole body of shareholders when injury is caused

to the corporation that may not otherwise be redressed because of failure of the

corporation to act."  See Jones v. H. F. Ahmanson & Co., 1 Cal. 3d 93, 106 (1969).  An

action is derivative "if the gravamen of the complaint is injury to the corporation, or to the

whole body of its stock or property without any severance or distribution among individual

holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its

assets."  See id.  A general rule is that "a stockholder of a corporation has no personal or

individual right of action against third persons, including the corporation's officers and

directors, for a wrong or injury to the corporation which results in the destruction or

depreciation of the value of his stock, since the wrong thus suffered by the stockholder is

merely incidental to the wrong suffered by the corporation and affects all stockholders

alike."  See id. at 107.

        Here, I-Enterprise does not allege that defendants' Detrimental Acts reduced the

value of the partnerships' assets, and consequently injured I-Enterprise.  Such a claim

would be a derivative claim, as the injury to I-Enterprise would be incidental to the injury to

the assets of the partnerships.  See id.  Rather, I-Enterprise now seeks to recover

damages for defendants' alleged failure to provide contractually-owed notice of their

wrongdoing to I-Enterprise, which prevented it from taking actions to protect its own

interests by (a) withholding further capital contributions; (b) selling its limited partnership

interest in Fund V or VI; (c) seeking judicial dissolution of the Partnerships; or (d) obtaining

a vote of two-thirds in interest of the limited partners to terminate the Partnerships.  (See

TAC ¶ 162.)  As noted in the December 15 Order, a claim for failure to provide notice to the

limited partners is a direct claim.  (See December 15 Order at 9-11, 17 (citing Anglo-American Security Fund, L.P. v. S.R. Global International Fund, L.P., 829 A.2d 143, 150-154 (Del. Ch. 2003)).  In short, a failure to give notice of Detrimental Acts "would injure only the partners, and not the partnership itself, as the financial condition of the partnership exists regardless of whether it is reported to the limited partners."  (See December 15 Order at 11 (citing Anglo-American, 829 A.2d at 154)).

### 2.  Damages

Defendants further argue that I-Enterprise's "failure to notify" claims should be dismissed because I-Enterprise was not entitled, under the limited partnership agreements, to unilaterally withdraw from the partnerships and, thus, cannot show that it was damaged by defendants' alleged failure to provide notice of Detrimental Acts.  Defendants correctly point out that the partnership agreements preclude limited partners from withdrawing from the partnership "without the prior written consent of the General Partner and a sixty-six and two-thirds percent (66-2/3%) in interest of the Limited Partners."  (See Ramani Decl. Ex. C (Fund V Limited Partnership Agreement) § 7.2 and Ex. C (Fund VI Limited Partnership Agreement) § 7.2.)  Defendants also note, in their reply, that a limited partner who fails to make any of the contributions required under the partnership agreements is "in default and the other Limited Partners . . . and the General Partner . . . have the right and option to acquire the Partnership interest of the defaulting Partner," (see id. § 4.5(b)), and that the partnership agreements preclude a limited partner from selling his interest in the partnerships "without the prior written consent of the General Partner," (see id. § 9.3.)

The limited partners are not entirely powerless to redress wrongdoing by the general partners, however, as § 14.9 of the partnership agreements provides that upon notice of Detrimental Acts, the partnerships may be terminated by "the vote of two-thirds (2/3) in interest of the Limited Partners."  (See id. ¶ 14.9.)  Defendants also fail to point to any provision of the partnership agreements that would preclude I-Enterprise from seeking judicial dissolution of the funds had I-Enterprise received notice of defendants' alleged wrongdoing.  As I-Enterprise points out, under California law, any limited partner may seek

8

1    judicial dissolution of a general partnership if, for example, "the property of the limited

2    partnership is being misapplied or wasted by the general partners" or "[d]issolution is

3    reasonably necessary for the protection of the rights or interest of the complaining

4    partners." See Cal. Corp. Code § 15682.

5        In short, the gravamen of I-Enterprise's claims is that defendants' failure to provide

6    notice of Detrimental Acts precluded I-Enterprise from taking action to protect its

7    investment in the funds, and that it suffered damage as a result thereof.  As defendants

8    have not shown, as a matter of law, that there was no action I-Enterprise could have taken

9    to protect its investment had it received notice of defendants' alleged wrongdoing, dismissal

10   is inappropriate.

11       **3. Rule 9(b)**

12       Defendants also argue that I-Enterprise has failed to plead its "failure to provide

13   notice" claim with the particularity required by Rule 9(b) of the Federal Rules of Civil

14   Procedure.  Rule 9(b) requires averments of fraud to be pleaded with particularity.  See

15   Fed. R. Civ. P. 9(b).  Defendants argue that "because [I-Enterprise's] new claims hinge on

16   the existence of "Detrimental Acts," the only type of claims [I-Enterprise] could possibly

17   bring under this Section would be fraud claims[.]" (See Motion at 7.)

18       This argument is unpersuasive, for two reasons.  First, the partnership agreement

19   defines "Detrimental Acts" to include "actual fraud or willful misconduct."  (See Ramani

20   Decl. Ex. C (Fund V Limited Partnership Agreement) § 8.4 and Ex. C (Fund VI Limited

21   Partnership Agreement) § 8.4.)  As "Detrimental Acts" can be proved by demonstrating that

22   defendants engaged in "willful misconduct," any claim based on "Detrimental Acts" is not

23   necessarily a fraud claim.  Here, plaintiffs allege defendants engaged in Detrimental Acts

24   as a result of willful misconduct.  (See TAC ¶ 26.)

25       Second, plaintiffs do not allege that defendants' failure to provide notice of their

26   wrongful acts was an act of fraud; rather, they contend the failure to provide notice was a

27   breach of contract and breach of fiduciary duty.  (See TAC ¶¶ 26, 87, 186, 200, 256, 270.)

28       Accordingly, Rule 9(b) has no application to the pleading of I-Enterprise's "failure to

9

1   provide notice" claims.

2   **4. Conclusion**

3       For the reasons set forth above, the Court will DENY defendants' motion to dismiss

4   I-Enterprise's claims based on failure to provide notice of Detrimental Acts.

5   **B. Massachusetts Blue Sky Law**

6       I-Enterprise alleges defendants violated the "Massachusetts Blue Sky law"[4] by

7   selling interests in the Fund VI limited partnerships by means of various misrepresentations

8   and omissions contained in the offering memorandum and partnership agreement for Fund

9   VI.  (See TAC ¶ 240-253.)  I-Enterprise alleges that it is a Delaware limited liability

10  company with a place of business in Hingham, Massachusetts, and that its sole member is

11  a Delaware limited liability company, the members of which are all Massachusetts citizens.

12  (See id. ¶ 4.)  I-Enterprise acknowledges that Fund VI is a California limited partnership

13  formed pursuant to the terms of the California Revised Limited Partnership Act.  (See id.

14  ¶ 20.)  Defendants move to dismiss I-Enterprise's claim for violation of the Massachusetts

15  Blue Sky law on the ground that the Fund VI limited partners, including I-Enterprise,

16  specifically agreed that California law would govern the terms of the Fund VI investment,

17  and that application of Massachusetts law is inconsistent with the public policy of the state

18  of California.

19      The Fund VI Limited Partnership Agreement expressly provides: "This Agreement

20  shall be governed by and construed under the laws of the State of California as applied to

21  agreements among the residents of such state made and to be performed entirely within

22  such state."  (See Ramani Decl. Ex. C (Fund VI Limited Partnership Agreement) § 15.1.)  In

23

24      [4] Under the Massachusetts Uniform Securities Act, which I-Enterprise refers to as
    the "Massachusetts Blue Sky law," any person who "offers or sells a security by means of
25  any untrue statement of material fact or any omission to state a material fact necessary in
    order to make the statements made, in the light of the circumstances under which they are
26  made, not misleading . . . is liable to the person buying the security from him, who may sue
    either at law or in equity to recover the consideration paid for the security, together with
27  interest at six per cent per year from the date of payment, costs, and reasonable attorneys'
    fees, less the amount of any income received on the security, upon the tender of the
28  security."  See Mass. Gen. Laws, ch. 110A, § 410(a)(2).

a diversity action, the Court, in determining the enforceability of a contractual choice of law provision, applies the choice of law rules of the forum state.  See General Signal Corp. v. MCI Telecommunications Corp., 66 F.3d 1500, 1505 (9th Cir. 1995).  Under California choice of law rules, courts "must apply the law designated by the contractual provision unless (1) the chosen state has no substantial relationship to the parties or transaction; or (2) such application would run contrary to a California public policy or evade a California statute."  See id. at 1506 (citing Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 466 (1992)).

I-Enterprise concedes that defendant DFJ-VI is a California limited liability company, (see TAC ¶ 6), and that individual defendants Draper, Fisher, and Jurvetson are all residents of California, (see id. ¶¶ 7-9).  Accordingly, the parties' choice of California law has a substantial relationship to the parties or transaction.

There is no argument that application of California law to the instant dispute would run contrary to California public policy or evade a California statute.  Thus, both parts of the California test for applying a contractual choice of law provision are satisfied in the instant action.

In addition, the California Supreme Court has held that "[w]hen a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to all disputes arising out of the transaction or relationship."  See Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th at 469 (emphasis in original).  Accordingly, in the absence of any other contractual provision to the contrary, California law is applicable to the instant dispute, and I-Enterprise's claim under Massachusetts law is subject to dismissal.

As I-Enterprise points out, however, although the parties agreed, in the Fund VI Subscription Agreement, that I-Enterprise's subscription to Fund VI would "be enforced, governed and construed in all respects in accordance with the laws of the State of California," (see Ramani Decl. Ex. B (Fund VI Subscription Agreement) ¶ 6), the parties

also agreed: "Notwithstanding any of the representations, warranties, acknowledgments or agreements made herein by the undersigned, the undersigned does not hereby or in any other manner waive any rights granted to him or her under federal or state securities laws." (See id. ¶ 3.)[5]  Read together, the two sections are susceptible of an interpretation under which California law generally governs, but investors in Fund VI are not precluded from bringing suit to enforce their rights under any applicable federal or state securities law.[6]

The Massachusetts Supreme Court has held that the Massachusetts Blue Sky law applies where the defendants offer or sell a security in Massachusetts.  See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 52 (2004).  An offer to sell is deemed to have been made in Massachusetts when the offer either (1) originates in Massachusetts or (2) is directed by the seller to a purchaser in Massachusetts.  See Mass. Gen. Laws, ch. 110A, § 414(c).  The Fund VI Subscription Agreement and Limited Partnership Agreement each indicate that Stephen Roy ("Roy"), the purchaser from whom I-Enterprise obtained its interest, is located in Massachusetts.  (See Ramani Decl. Ex. B (Fund VI Subscription Agreement), signature page, and Ex. C (Fund VI Limited Partnership Agreement), signature page.)

Defendants argue, however, that application of Massachusetts law to the instant transaction would violate California public policy.  As noted above, a contractual choice of law provision is not enforceable under California choice of law rules if "such application would run contrary to a California public policy or evade a California statute."  See General

_____

[5] I-Enterprise points out that both California and Massachusetts securities law include an anti-waiver provision.  See Cal. Corp. Code § 25701 ("Any condition, stipulation or provision purporting to bind any person acquiring any security to waive compliance with any provision of this law or any rule or order hereunder is void."); see also Mass. Gen. Laws, ch. 110A, § 410(g) ("Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this chapter or any rule or order hereunder is void.").

[6] The Court makes no dispositive finding on this issue, but rather construes the agreement in the light most favorable to I-Enterprise, as it is required to do in ruling on the instant motion to dismiss.  See, e.g., NL Industries, Inc. v. Kaplan, 792 F.2d at 898 (holding court, in analyzing motion to dismiss, must construe allegations in light most favorable to nonmoving party).

Signal Corp. v. MCI Telecommunications Corp., 66 F.3d at 1505 (citing Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th at 466).  Defendants argue that although both California and Massachusetts securities laws protect investors from those who sell a security by means of untrue statements of material fact or omissions of material fact, (see Cal. Corp. Code §§ 25401, 25501; Mass. Gen. Laws, ch. 110A, § 410(a)(2)), the California Securities Act has a shorter statute of limitations than the four-year period set forth under the Massachusetts Blue Sky law.  Compare Cal. Corp. Code § 25506 ("no action shall be maintained . . . unless brought before the expiration of four years after the act or transaction constituting the violation or the expiration of one year after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire") with Mass. Gen. Laws, ch. 110A, § 410(e) ("No person may sue . . . more than four years after the discovery by the person bringing the action of a violation").  Defendants argue that California public policy precludes enforcement of claims under another state law that would be time-barred if brought under California law.

The Ninth Circuit has held that "California's interest in applying its own law is strongest when its statute of limitations is shorter than that of the foreign state, because a "state has a substantial interest in preventing the prosecution in its courts of claims which it deems to be 'stale.'" Deutsch v. Turner Corp., 324 F.3d 692, 717 (9th Cir. 2003) (citing Restatement (Second) of Conflict of Laws § 142, cmt. f (1988)).  There is no showing, however, that I-Enterprise's claims would be time-barred if brought under California law.  As I-Enterprise notes, the complaint in the instant action was filed April 11, 2003, within four years of the date Roy entered into the Fund VI Subscription Agreement and Limited Partnership Agreement.  (See Ramani Decl. Ex. B (Fund VI Subscription Agreement), entered into July 31, 1999, and Ex. C (Fund VI Limited Partnership Agreement), entered into August 13, 1999.)  As noted, a claim for violation of the California Securities Act must be "brought before the expiration of four years after the act or transaction constituting the violation or the expiration of one year after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire."  See Cal. Corp. Code § 25506.

Defendants have made no showing that, as a matter of law, I-Enterprise discovered the alleged violations more than one year before the complaint was filed.  Thus, defendants have not shown that application of Massachusetts law would violate California public policy.

Accordingly, because the Fund VI Subscription Agreement may have reserved to I-Enterprise the right to bring suit under any applicable state securities law, and there has been no showing that application of Massachusetts law would violate California public policy, the Court will DENY defendant's motion to dismiss I-Enterprise's claim for violation of the Massachusetts Blue Sky law.

**C. Negligent Misrepresentation**

I-Enterprise asserts claims for negligent misrepresentation based on the allegation that defendants made various material misrepresentations and/or failed to disclose material information to I-Enterprise in connection with the marketing of Funds V and VI.  (See TAC ¶¶ 173, 228.)  Defendants now move to dismiss I-Enterprise's claims for negligent misrepresentation based on some, but not all, of the alleged misrepresentations.

The elements of negligent misrepresentation are: (1) "misrepresentation (false representation, concealment, or nondisclosure)"; (2) the plaintiff's justifiable reliance on the misrepresentation; and (3) damages.  See Small v. Fritz Companies, Inc., 30 Cal. 4th 167, 173 (2003).  "The tort of negligent misrepresentation does not require scienter or intent to defraud."  Id.  Negligent misrepresentation encompasses "the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true" and "the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, although he believes it to be true."  See id. (citing Cal. Civ. Code §§ 1710(2) and 1572(2)).

In addition, "[t]o state a cause of action for negligent misrepresentation, plaintiff must allege facts establishing that the defendant owed him a duty to communicate accurate information."  See Friedman v. Merck & Co., 107 Cal. App. 4th 454, 477 (2003).  "California courts have recognized a cause of action for negligent misrepresentation, i.e., a duty to communicate accurate information . . . where information is conveyed in a commercial

14

setting for a business purpose." <u>See</u> <u>id</u>.  In addition, "a seller of a limited partnership

interest owes a fiduciary duty [to disclose all material facts] to the prospective purchaser of

such an interest." <u>See</u> <u>Eisenbaum v. Western Energy Resources, Inc.</u>, 218 Cal. App. 3d

314, 322, 324 (1990).  Further, where "one is under no duty to speak, but yet undertakes to

do so, either voluntarily or in response to inquiry, he must make a full and fair disclosure

and conceal no facts within his knowledge which materially qualify those stated[.]" <u>See</u>

<u>Kuhn v. Gottfried</u>, 103 Cal. App. 2d 80, 86 (1951).

Accordingly, I-Enterprise has adequately alleged that defendants owed I-Enterprise

"a duty to communicate accurate information" about the Funds.  <u>See</u> <u>Friedman v. Merck &</u>

<u>Co.</u>, 107 Cal. App. 4th at 477.

## 1.  General Market Trends

Defendants move to dismiss I-Enterprise's negligent misrepresentation claims, to the

extent such claims are based on failure to disclose general market trends that might affect

anticipated future performance and investment strategies, on the ground defendants had

no duty to disclose such trends.  In response, I-Enterprise contends that it "does not seek

to recover for speculative statements Defendants might have made about <u>future</u> market

performances or <u>future</u> market changes," but rather alleges that defendants made

misrepresentations about "their place in the venture capital market."  (<u>See</u> Opp. at 19-20.)

Both parties rely on allegations set forth in paragraphs 77 through 81 of the Third

Amended Complaint.  In particular, plaintiffs allege that defendants made the following

misrepresentations in the Fund V and Fund VI Offering Memoranda:

> 78. For example, contrary to the representations of the Individual Defendants
> that they filled an industry "void," that early stage investing was an
> "underserved" niche, that there were only a handful of early stage venture
> funds, that they rarely encountered other such funds in head-to-head
> competition, that they had strong pricing leverage when they made initial
> investments, and that the larger size of Fund VI was necessary in order to
> maintain large early ownership positions through follow-on rounds, in fact, the
> venture capital market had experienced explosive growth with a dramatic
> increase in the number of venture capital firms at all stages, there were
> historically high levels of capital available in the market, DFJ faced intense
> competition from other funds, and in order to participate in deals they were
> having to write much bigger checks and make much larger initial investments
> than in the past.

79. Contrary to the representations of the Individual Defendants that their positioning enabled them to get favorable terms for follow-on investments from "mainstream" venture firms that have to compete with one another under "pressure to invest the significant amount of capital they manage," in fact, DFJ was itself transitioning to become a "mainstream" firm, and the Individual Defendants were under significant pressure to invest the ever-increasing amounts of capital they were raising.

80. Contrary to the representations of the Individual Defendants that they would invest small amounts in many start-up and "true 'seed' deals," in fact, the large size of Funds V and VI and the small number of experienced investment professionals who would invest them created a structural inability to make and closely manage the small investments start-ups and true seed deals require.

(See TAC ¶¶ 78-80.)

Defendants argue they had no duty to disclose "anticipated market performance or possible market changes." (See Motion at 13.) As an initial matter, the Court notes that defendants rely on federal case law interpreting federal securities laws. Such reliance on federal law has been held inappropriate, however, because, although "[f]ederal precedent may be appropriate in the absence of existing state law on an issue, . . . California has an existing body of law on the tort of negligent misrepresentation." See Anderson v. Deloitte & Touche LLP, 56 Cal. App. 4th 1468, 1476 n.4 (1997). Defendants fail to address whether any such duty to disclose exists under California law, and, for that reason alone, are not entitled to dismissal. In addition, contrary to defendants' assertion, the above-cited paragraphs do not allege a failure to disclose anticipated market performance or possible market changes. Rather, I-Enterprise alleges defendants made affirmative misstatements in the Offering Memoranda about their currently-existing structure and position in the market.

Relying on Glen Holly Entertainment Inc. v. Tektronix Inc., 352 F.3d 367 (9th Cir. 2003), defendants further contend the challenged statements are non-actionable "puffery." In Glen Holly, the Ninth Circuit held three statements "generally describing the 'high priority' [the defendant] placed on product development and alluding to marketing efforts" could not be the basis of a claim for negligent misrepresentation because "[t]he statements were generalized, vague and unspecific assertions, constituting mere 'puffery' upon which a

16

1  reasonable consumer could not rely."  See id. at 379.  Here, the Court cannot say as a

2  matter of law that the challenged statements are mere puffery.  I-Enterprise alleges that

3  defendants misrepresented their existing position in the market in specific ways, and in

4  particular, that defendants advertised Funds V and VI as two of the few venture funds

5  capable of investing in early stage companies, when in fact there were many such funds

6  already in existence and, further, Funds V and VI were structurally incapable, due to their

7  large size, of managing the small investments early stage companies require.  (See TAC

8  ¶¶ 78-80.)  The Court cannot say as a matter of law that such statements were so

9  generalized, vague and unspecific that a reasonable investor could not rely on them.  See

10  Anderson v. Deloitte & Touche LLP, 56 Cal. App. 4th at 1479 (holding that in all but rare

11  instances, "whether the plaintiff's reliance is reasonable is a question of fact").

12      Accordingly, the Court will DENY defendants' motion to dismiss the negligent

13  misrepresentation claim to the extent it is based on misrepresentations alleged in ¶¶ 77-81

14  of the Third Amended Complaint.

15              **2.  Investment Objectives**

16      Defendants move to dismiss, as time-barred, I-Enterprise's claim that defendants

17  misrepresented, in the Offering Memoranda, the Funds' investment objectives.  Defendants

18  rely on the three-year statute of limitations for fraud actions set forth in California Code of

19  Civil Procedure § 338(d), under which a fraud claim "is not to be deemed to have accrued

20  until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

21  See Cal. Code Civ. Proc. § 338(d).  According to defendants, plaintiffs have conceded that

22  they received the Offering Memorandum for Fund V on June 26, 1998, and for Fund VI in

23  July 1999, and that both dates are more than three years before the instant action was filed

24  on April 11, 2003.  (See TAC ¶¶ 49, 55.)  Defendants further contend I-Enterprise has not

25  alleged facts sufficient to demonstrate that their claims based on misrepresentation of

26  investment objectives are timely.

27      The statute of limitations is an affirmative defense to be raised by the defendants,

28  however, not a pleading requirement that must be satisfied by the plaintiff.  See Fed. R.

17

Civ. P. 8(c); see also California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402 (9th Cir. 1995) ("A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred.")  A statute of limitations defense is properly raised in a motion to dismiss only "if the running of the statute is apparent from the face of the complaint."  See Ledesma v. Jack Stewart Produce, Inc., 816 F.2d 482, 484 n.1 (9th Cir. 1987); see also Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.").  Only if the complaint on its face demonstrates the cause of action is time-barred, and the plaintiff relies on the discovery rule to show timeliness, does the plaintiff have the burden to "specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  See CAMSI IV v. Hunter Technology Corp., 230 Cal. App. 3d 1525, 1536 (1991); see also California Gypsum Co. v. U.S. Gypsum, 55 F.3d 1402 (9th Cir. 1995) (citing CAMSI IV).  In cases involving a fiduciary relationship between the parties, however, "the usual duty of diligence to discover facts does not exist" and "the limitations period does not begin to run until plaintiff actually discovers the facts constituting the cause of action, even though the means for obtaining the information are available."  See Eisenbaum, 218 Cal. App. 3d at 325.

Here, the complaint on its face does not demonstrate plaintiff's claim is time-barred. Plaintiff's receipt of the Offering Memoranda provides no basis for inferring that plaintiff knew, as of that date, that the representations contained therein were false.[7]  Defendants point to no allegation in the complaint suggesting that plaintiff was aware more than three years before the instant action was filed that the representations contained in the Offering Memoranda were false.  Because the complaint, on its face, does not show the cause of action to be time-barred, the Court will DENY defendants' motion to dismiss plaintiff's claim

---

[7] Because fraud, by its very nature, is predicated on a lack of knowledge of the wrongful conduct at the time that conduct is committed, § 338(d), unlike many statutes of limitation, does not provide for accrual at the time of an event other than discovery.

1    for negligent misrepresentation, to the extent such claim is based on misrepresentation of

2    investment objectives in the Offering Memoranda.

3                    **3.  Failure to Devote Appropriate Time to Managing Funds**

4           Defendants move to dismiss I-Enterprise's negligent misrepresentation claim to the

5    extent such claim is based on misrepresentations about the amount of time defendants

6    promised to devote to the management of Funds V and VI.  I-Enterprise alleges the Fund V

7    and VI Limited Partnership Agreements provide that each individual defendant would

8    "devote so much of his time to the conduct of the affairs of the Partnership and the General

9    Partner as is appropriate in his judgment to manage effectively the affairs of the

10   Partnership."  (See TAC ¶ 137.)  In fact, I-Enterprise alleges, the individual defendants

11   "have failed to dedicate appropriate time to Fund V and Fund VI and have instead pursued

12   other interests to the detriment of I-Enterprise."  (See TAC ¶ 140.)  I-Enterprise alleges

13   that, in addition to Funds V and VI, the individual defendants marketed and promoted Fund

14   VII, a $640 million fund, raised another $690 million for a global technology fund, acted as

15   sub-adviser to a $330 million publicly traded venture fund, and were promoting seven or

16   more regional funds of $100 million or more each, which resulted in the individual

17   defendants' failure to dedicate appropriate time to Funds V and VI.  (See id. ¶ 142.)

18   I-Enterprise further alleges that defendant Fisher relocated to London for a substantial

19   period of time to organize the global technology fund, and did not dedicate appropriate time

20   to managing Funds V and VI.  (See id. ¶ 144.)  Moreover, defendant Draper, according to

21   I-Enterprise, spent a substantial portion of his time campaigning for a ballot initiative in

22   California in 2000, rather than dedicating appropriate time to managing Funds V and VI.

23   (See id. ¶ 145.)

24          Defendants argue that the very terms of the limited partnership agreements on

25   which I-Enterprise rely contradict I-Enterprise's claim of misrepresentation.[8]  The Fund V

26

27          [8] Documents whose contents are alleged in the complaint, and whose authenticity
     no party questions, but which are not physically attached to the pleading, may be
28   considered in ruling on a motion to dismiss.  See Branch v. Tunnell, 14 F.3d at 454.

and Fund VI Limited Partnership Agreements both state:

> Each Managing Member of the General Partner hereby agrees that, so long as he remains a Managing Member of the General Partner, he shall devote so much of his time to the conduct of the affairs of the Partnership and the General Partner as is appropriate in his judgment to manage effectively the affairs of the Partnership.  The Limited Partners acknowledge that each managing member of the General Partner has existing commitments to other entities, that such commitments will continue during the term of the Partnership and that additional commitments may be added during the term of the Partnership.

(See Ramani Decl. Ex. C (Fund V Limited Partnership Agreement) § 8.3, and Ex. C (Fund VI Limited Partnership Agreement) § 8.3.)

In the contractual language set forth above, defendants are expressly given the authority to determine how much time is necessary to manage the funds effectively. I-Enterprise does not allege that defendants, in fact, devoted no time to that endeavor. Rather, I-Enterprise alleges that defendants failed to disclose other, then-existing commitments.  The limited partnership agreements specifically disclose, however, the existence at that time of "commitments to other entities."  (See id.)  The failure to specify the particular commitments does not render those statements false or misleading.

Additionally, as to Fund VI, I-Enterprise alleges that DFJ-VI and the individual defendants failed to disclose the existence and terms of a "side agreement entered into by them prior to the closing of Fund VI," by which the individual defendants were required to devote only half their time to the business of all DFJ funds combined, "and guaranteed them each personally millions of Fund VI management fees even if they devoted no time to Fund VI at all."  (See TAC ¶ 170.)  There is nothing inconsistent, however, between the statements made in the Fund VI Limited Partnership Agreement and the alleged "side agreement."  Under such circumstances, I-Enterprise has not alleged falsity of the above-quoted statement in the Fund VI Limited Partnership Agreement.[9]

_____

[9] The Court expresses no opinion as to whether defendants, as I-Enterprise argues, could have breached the implied covenant of good faith and fair dealing by failing to devote an objectively adequate amount of time to managing the Funds.  The cause of action at issue is negligent misrepresentation, which requires a false representation or omission. See Small v. Fritz Companies, Inc., 30 Cal. 4th at 173.

1    Accordingly, defendants' motion to dismiss I-Enterprise's negligent

2    misrepresentation claim to the extent such claim is based on misrepresentations about the

3    amount of time defendants promised to devote to the management of Funds V and VI will

4    be GRANTED.

5                **4.  Failure to Disclose "Inter-Fund Loans or Retention of Directed**

6    **Shares"**

7    Defendants argue that I-Enterprise's allegations that defendants failed to disclose

8    "inter-fund loans or retention of directed shares" fails to state a claim for negligent

9    misrepresentation because I-Enterprise has not alleged any damages arising from the

10   alleged nondisclosure.  With respect to such nondisclosure, I-Enterprise alleges the

11   following:

12          164.  The Fund VI General Partner and the Individual Defendants failed to
            disclose that the Fund V General Partner had diverted Fund V monies for
13          non-Partnership purposes, including that the Fund V General Partner in 1998
            had used $375,000 of Fund V monies to purchase shares of Wit Capital for
14          the Fund V side-by-side fund and in July 1999 had used $1.59 million of Fund
            V monies to buy shares of Digital Impact for Fund IV.
15
            165.  The Fund VI General Partner and the Individual Defendants failed to
16          disclose that the General Partners of prior DFJ funds and the Individual
            Defendants had misappropriated, and intended to continue to misappropriate,
17          compensation and benefits, including directed shares and option grants,
            received on account of board memberships in prior fund portfolio companies
18          that should have been used to reduce management fees under those funds'
            Agreements.
19

20   (See TAC ¶ 164-165.)  Defendants argue that such allegations amount to a failure "to

21   disclose an accounting technicality."  (See Motion at 19.)  Defendants further argue that

22   I-Enterprise fails to allege that any of the loans was not repaid in full or that the accountants

23   for Fund V or Fund VI determined that the loans should have been disclosed to the limited

24   partners.  (See id.)  I-Enterprise fails to address this portion of defendants' motion in its

25   opposition and, thus, effectively concedes that it is not pursuing a negligent

26   misrepresentation claim based on paragraphs 164 and 165 of the Third Amended

27   Complaint.

28          Accordingly, the Court will GRANT defendants' motion to dismiss I-Enterprise's

1  negligent misrepresentation claim to the extent such claim is based on the nondisclosures

2  alleged in paragraphs 164 and 165 of the Third Amended Complaint.

3  **5. Failure to Disclose Information About Management Fees**

4  Defendants move to dismiss I-Enterprise's negligent misrepresentation claim to the

5  extent such claim is based on nondisclosure of information about management fees, on the

6  ground the calculation of management fees was disclosed in the limited partnership

7  agreements, and defendants had no duty to disclose any more than they did.  In

8  I-Enterprise's opposition, it states that its "allegations with respect to management fees do

9  not state a separate claim."  (See Opp. at 19 n.10.)  As I-Enterprise does not assert a

10  negligent misrepresentation claim based on nondisclosure of information about

11  management fees, defendants' motion to dismiss such claim will be DENIED as MOOT.

12  **C.  Relief Based on Violation of California Unfair Business Practices Act**

13  Defendants move to strike I-Enterprise's prayer for rescission of its investment in

14  Fund VI as a remedy for violation of the California Unfair Business Practices Act.

15  Defendants argue that the Court has already dismissed with prejudice I-Enterprise's claim

16  for violation of that Act.  In its opposition, I-Enterprise states that the request for relief was

17  inadvertent and that it does not oppose defendants' motion to strike.  (See Opp. at 23

18  n.14.)

19  Accordingly, the Court will GRANT defendants' motion to strike I-Enterprise's prayer

20  for relief for violations of the California Unfair Business Practices Act.

21  **CONCLUSION**

22  For the reasons set forth above,

23  1.  Defendants' motion to dismiss is hereby GRANTED in part and DENIED in part,

24  as follows:

25  a.  Defendants' motion to dismiss I-Enterprise's negligent misrepresentation

26  claim to the extent such claim is based on misrepresentations about the amount of time

27  defendants promised to devote to the management of Funds V and VI is hereby

28  GRANTED.

b.  Defendants' motion to dismiss I-Enterprise's negligent misrepresentation claim to the extent such claim is based on the nondisclosures alleged in paragraphs 164 and 165 of the Third Amended Complaint is hereby GRANTED.

c.  The remainder of defendants' motion to dismiss is DENIED.

2.  Defendants' motion to strike I-Enterprise's prayer for relief for violations of the California Unfair Business Practices Act is hereby GRANTED.

This order terminates Docket No. 329.

**IT IS SO ORDERED.**

Dated: July 15, 2005

/s/ Maxine M. Chesney
MAXINE M. CHESNEY
United States District Judge

23