1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10  I-ENTERPRISE CO.,                          No. C-03-01561 MMC (EDL)

11              Plaintiff,                      **ORDER GRANTING IN PART
                                                PLAINTIFF'S MOTION TO COMPEL**
12       v.

13  DRAPER FISHER JURVETSON
    MANAGEMENT CO., et al.,
14
15              Defendants.
    _____/

16

17       Defendants are the general partners of venture capital funds Draper Fisher Jurvetson Fund V, L.P.

18  and Draper Fisher Jurvetson Fund VI.  Plaintiff is a limited partner in Fund V and Fund VI and has

19  committed approximately $42 million to the Funds.  Plaintiff alleges that the individual Defendants engaged

20  in material misrepresentations and fraud in the marketing of Fund V and Fund VI, breached their fiduciary

21  duties in the management of the funds and wrongfully paid themselves over $70 million in management fees

22  and $30 million in other distributions from those funds.  Plaintiff now moves to compel documents from one

23  of Defendants' three testifying experts, Paul Gompers, and from Defendants' non-testifying consultant,

24  Cornerstone Research, an expert support service.  Specifically, Plaintiff seeks: (1) all communications that

25  Cornerstone sent to or received from Defendants' three testifying experts; (2) all analyses and raw data

26  Cornerstone prepared on behalf of or at the direction of those testifying experts or that Cornerstone

27  received from the experts; and (3) documents that Professor Gompers withheld from production.

28

**1.       Cornerstone**

**United States District Court**
For the Northern District of California

1    On March 29, 2005, Plaintiff served a subpoena on Cornerstone seeking: (1) all draft expert

2    reports from the three experts; (2) all documents sent to or received from Defendants' three testifying

3    experts; and (3) all documents reflecting raw data or analyses that Cornerstone provided to the experts.

4    See Declaration of Ashok Ramani Ex. B.  Cornerstone agreed to produce some documents, but withheld

5    documents relating to: (1) preliminary work regarding opinions to which the experts will not testify at trial

6    because they relate to claims that Plaintiff has dropped or that were eliminated from the case; (2)

7    documents created after the March 11, 2005 exchange of expert rebuttal reports regarding Cornerstone's

8    and the testifying experts' assistance in preparing defense counsel for depositions of Plaintiff's experts; and

9    (3) documents created after the March 11, 2005 exchange of rebuttal reports regarding Cornerstone's and

10   the testifying experts' work done to assist defense counsel in preparing for the summary judgment motion.

11   See Declaration of Jeffery Lokey ¶¶ 10-12.  Cornerstone argues that the documents should not be

12   produced because they are protected by the work product doctrine, they do not relate to the scope of the

13   testifying expert's opinions and there are no exceptional circumstances that justify disclosure under Federal

14   Rule of Civil Procedure 26(b)(4).

15   The work product doctrine protects documents prepared by a party's non-testifying consultant like

16   Cornerstone to the extent that those documents reflect advice and were prepared in anticipation of

17   litigation.  See Fed. R. Civ. P. 26(b)(3).  However, intentional disclosures of work product to a testifying

18   expert witness effectively waives the work product privilege as to materials related to matters about which

19   the expert will testify.  See Intermedics v. Venitrex, Inc., 139 F.R.D. 384, 388 (N.D. Cal. 1991)

20   ("[A]bsent an extraordinary showing of unfairness that goes well beyond the interests generally protected

21   by the work product doctrine, written and oral communications from a lawyer to an expert that are related

22   to matters about which the expert will offer testimony are discoverable, even when those communications

23   otherwise would be deemed opinion work product.").  The importance of ensuring a fair opportunity to

24   cross-examine the expert at trial counsels in favor of construing the subject matter of the expert's opinions

25   broadly and resolving ambiguities about which capacity a dual purpose expert is functioning in favor of

26   waiver.  See In re Air Crash at Dubrovnik, Croatia, 2001 WL 777433, *3 (D. Conn. 2001) (where an

27   expert both testifies and consults, the work product doctrine may only be invoked to protect work that is

28   clearly done only in the expert's consultative capacity; "any ambiguity about which function was served by

the expert when creating a document must be resolved in favor of discovery."); see also Monsanto Co. v. Aventis Cropscience, N.V., 214 F.R.D. 545, 547 (E.D. Mo. 2002) ("A court need not compel disclosure of materials an expert considered in his consultative capacity (i.e., before he was designated as a testifying expert) that have no relation to the expert's role as an expert.  When, however, the subject matter of those materials relates to the facts and opinions the expert expressed in his report, the courts should order disclosure when there is at least an ambiguity as to whether the materials informed the expert's opinion.").

Cornerstone argues that documents relating to claims dropped from the case and not included in the expert reports are not discoverable because they are outside the scope of the experts' opinions.  At the hearing, Cornerstone clarified that it was only seeking to protect documents related to dismissed claims regarding valuation of holdings in non-public portfolio companies.  The expert reports do not contain opinions on this issue.  Nor has there been a showing that the valuation claims are within the broad scope of the expert opinions.  Therefore, the work product protection has not been waived for documents relating solely to the valuation claims that are no longer at issue in this case.  Moreover, Plaintiff has not shown exceptional circumstances justifying production of these documents:

> A party may, through interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(B); see also FMC Corp. v. Vendo Co., 196 F. Supp. 2d 1023, 1047 (E.D. Cal. 2002) (stating that exceptional circumstances may exist where: "1) the object or condition at issue is destroyed or had deteriorated after the non-testifying expert observes it but before the moving party's expert has an opportunity to observe it; or 2) there are no other available experts in the same field or subject area.").  Therefore, Plaintiff's motion to compel production of these documents is denied.

Cornerstone next argues that it is properly withholding documents relating to Cornerstone's and the testifying experts' assistance, after the exchange of rebuttal reports, in preparing Defendants' counsel for Plaintiff's experts' depositions and for their summary judgment motion, because these documents do not relate to the formation of the experts' opinions.  These documents are within the scope of the testifying experts' reports, however, and are therefore subject to waiver of the work product protection.  The Court

conducted an <u>in camera</u> review of these documents to assess whether they are discoverable.  Based on that review, Plaintiff's motion to compel production of these documents is granted in part as follows.  Production of these documents shall occur only after the depositions of Plaintiff's experts, as Plaintiff agreed to at the hearing.

With respect to the documents created by Cornerstone for Defendants' attorneys in preparation for depositions and trial, Defendants lodged several documents relating directly to the subject matter of the experts' opinions, many of which were reviewed or possibly reviewed by Defendants' testifying experts or were addressed to a testifying expert.  Cornerstone shall produce the documents regarding the Audit Working Paper and the Potential Questions for the Deposition of Thomas Porter because they were shown to or reviewed by a testifying expert and relate substantively to the expert opinions.  Cornerstone shall also produce the Potential Follow Up to the Rebuttal Reports of Plaintiff's Experts; although the expert cannot recall whether he reviewed it, the document includes notations indicating the testifying expert's responsibility for certain items, so he likely examined it.  Cornerstone shall also produce the e-mail that was sent to Professor Gompers, among others, which relates to discussions of relevant issues.  The webpage snapshot, which does not appear to have been reviewed by an expert and does not relate substantively to the experts' opinions, need not be produced.

With respect to the documents created by Cornerstone to assist Defendants' attorneys in preparation for their summary judgment motion, Defendants lodged various e-mails regarding scheduling or attaching pleadings, and drafts of documents relating to the summary judgment motion, all of which were reviewed by testifying experts.  Drafts and all copies of pleadings for the summary judgment motion that were lodged for <u>in camera</u> review shall be produced because they relate to the experts' opinions and were reviewed by the experts.  To the extent that the e-mails relate merely to scheduling, they need not be produced because they do not relate substantively to the experts' opinions, even though they were reviewed by the experts.  For the same reason, the e-mail to an expert attaching the subpoena need not be produced.

**2.      Professor Gompers**

Professor Gompers stated in his expert reports that based on his review of "several hundred VC offering memoranda" and "hundreds of PPMs and limited partnership agreements," Defendants' offering

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   memoranda, private placement memoranda ("PPM") and limited partnership agreements were not unusual.

2   See Ramani Decl. Ex. M at 6; Ex. N at 4.  On March 22, 2005, Plaintiff served a deposition subpoena on

3   Gompers, seeking production of documents, including "[t]he several hundred VC offering memoranda

4   reviewed by Mr. Gompers in the past."  See Ramani Decl. Ex. K.  Professor Gompers did not produce

5   these documents at his deposition.  See Ramani Decl. Ex. A at 8:22-9:16.

6          Professor Gompers testified at his deposition that the hundreds of PPMs and limited partnership

7   agreements that he referenced in the expert reports included those that formed the basis of his research for

8   two articles published in 1996 and 1999, which are now housed in the Harvard Archives.  See Ramani

9   Decl. Ex. A at 9:1-16.  He testified that those archived documents are subject to confidentiality agreements.

10  See id.  He also testified that he continues to receive other partnership agreements that he generally does

11  not retain.  See id. Ex. A at 9:11-16; Jonathan Sanders Decl. Ex. A at 11:12-15; 15:8-10.

12         Plaintiff makes a good argument that Professor Gompers waived any objections to the document

13  production because he failed to object to the subpoena pursuant to Federal Rule of Civil Procedure 45.

14  See U.S. ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002) ("Failure to serve timely

15  objections waives all grounds for objection, including privilege.").  In certain circumstances and for good

16  cause, however, the failure to object will not bar consideration of objections.  See, e.g., American Elect.

17  Power Co., Inc. v. United States, 191 F.R.D. 132, 136-37 (S.D. Ohio 1999) ("'In unusual circumstances

18  and for good cause, however, the failure to act timely will not bar consideration of objections.' [citation

19  omitted]  Courts have found unusual circumstances where: (1) the subpoena is overbroad on its face and

20  exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and

21  (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness'

22  compliance prior to the time the witness challenged the legal basis for the subpoena." [citations omitted]).

23  Here, even if Professor Gompers failed to timely object, there is good cause to find that his objections have

24  not been waived.  Although his status as a non-party expert does not relieve him of his obligation to

25  respond to discovery, the subpoena sought fifteen categories of documents and Professor Gompers

26  produced over 12,000 documents.  He is a non-party and there is no evidence that he acted in bad faith.

27  Prior to his deposition, he stated, through letters by defense counsel dated March 31, 2005 and April 1,

28  2005 that were attached to his document production, that some documents were being withheld.  See Coll-

1   Very Decl. Ex. A, B ("These documents . . . comprise the document responsive to the subpoena . . .

2   except for expert reports older than five years, expert reports and testimony subject to confidentiality

3   agreements or order, or documents that are publicly available.").  He appeared without separate counsel

4   for his deposition in response to the subpoena and produced the majority of categories of documents

5   requested in that subpoena.  In his deposition, he testified openly about withholding the archived

6   documents.  Therefore, the Court finds that  Professor Gompers did not waive the objections to the

7   subpoena.

8          Documents considered by an expert in forming his or her opinions are discoverable.  See Fed. R.

9   Civ. P. 26(a)(2)(B); Mushroom Associates v. Monterey Mushroom, 1992 US Dist. LEXIS 20640, *7

10  (N.D. Cal.) ("The defendants shall have access to all documents considered by [the expert], whether

11  rejected or relied upon.  'Considered' applies to all documents [the expert] reviewed in preparation for his

12  expert testimony."); United States v. City of Torrance, 163 F.R.D. 590, 593-94 (C.D. Cal. 1995).

13  Professor Gompers considered the archived documents with respect to his opinion in this case and

14  expressly based his expert opinion in significant part on these documents.  Professor Gompers and

15  Defendants point out that he did not specifically review the archived documents in preparation for his expert

16  reports; instead, he relied on his memory.  Accordingly, they argue that his reliance on the archived

17  documents is no different than an expert's reliance on any other general background information that the

18  expert learned in the course of his education and training, which need not be produced.  But the opposing

19  party normally would be able to effectively cross-examine the expert on his general education and training

20  by using non-confidential readily available sources, such as well-known treatises in the field.  Here, by

21  contrast, the PPMs that Professor Gompers relied upon are confidential documents not otherwise readily

22  available to Plaintiff.  The fact that he did not retain other similar documents that he has also received and

23  relied on since the publication of his articles does not obviate the need for the archived documents, but

24  instead underscores it.  Nor are the documents so voluminous, scattered and impractical to retrieve as

25  documents only recalled from an expert's broad general background.  Rather, they are centrally archived.

26         The Court is also not persuaded by the argument that the confidential documents are protected by

27  academic freedom arising out of the First Amendment journalist's privilege.  See Shoen v. Shoen, 5 F.3d

28  1289, 1292 (9th Cir. 1993) ("Rooted in the First Amendment, the privilege is a recognition that society's

United States District Court
For the Northern District of California

1   interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information

2   to the public, is an interest 'of sufficient social importance to justify some incidental sacrifice of sources of

3   facts needed in the administration of justice.'") (quoting Herbert v. Lando, 441 U.S. 153, 183 (1979)).

4   The "critical question for deciding whether a person may invoke the journalist's privilege is whether she is

5   gathering news for dissemination to the public.  The test is . . . whether the person seeking to invoke the

6   privilege had 'the intent to use the material -- sought, gathered or received -- to disseminate information to

7   the public and whether such intent existed at the inception of the newsgathering process.'"  See Shoen, 5

8   F.3d at 1293 (quoting von Bulow v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987)).

9         The Ninth Circuit has not extended the journalist's privilege to academic authors or researchers in

10   general.  Professor Gompers relies on a district court case in which the court analogized an academic

11   researcher to a journalist, but applied a balancing test to determine that the researcher, who was not a party

12   or expert in the case, did not have to produce confidential source material.  See Richards of Rockford, Inc.

13   v. PG&E, 71 F.R.D. 388, 390 (N.D. Cal. 1976) (holding that academic researchers, who were not

14   experts in the case, were not required to produce confidential sources because the researchers were third

15   parties to the case, the research project was not initiated for the lawsuit but involved research about

16   questions of public policy, the events at issue in the case were not the focus of the research project and the

17   factual issues presented by the lawsuit could be resolved without resort to the confidential information,

18   which was merely supplementary).  Richards does not aid Professor Gompers and is factually

19   distinguishable in all key respects.  While there are good reasons to extend a qualified privilege to purely

20   academic researchers whom a party seeks to draft involuntarily into its litigation wars, that situation is a far

21   cry from academics who choose to serve as paid experts and voluntarily base their opinions in part on

22   confidential research.  Academic freedom can be preserved by academics foregoing such non-academic

23   roles, or at least confining their opinions to those based on non-confidential research.  No court has

24   endorsed the remedy proposed here of shielding from the opposing party the material relied upon by the

25   hired expert as a sword in the name of academic freedom.

26         The Court is nonetheless mindful of Professor Gompers's legitimate concerns that the archived

27   documents are subject to confidentiality agreements and his research might be chilled if the companies that

28   cooperated with him fear that their materials will now be used against them by Plaintiff in other litigation.

The Court considered ordering production of the documents with redactions, but is convinced that redaction of all of the documents at this time would be very time-consuming and costly, yet potentially unnecessary, as Plaintiff may introduce few, if any, into evidence if the case is not resolved prior to trial. Instead, Plaintiff's motion to compel Professor Gompers to produce the archived documents is granted, but subject to attorneys' and outside experts' eyes only under the protective order.  Redaction may be warranted if and when Plaintiff seeks to introduce them into the public record.  If so, Defendants may ask the Court for appropriate protection at that time.

**IT IS SO ORDERED.**

Dated: September 15, 2005

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge

**United States District Court**
For the Northern District of California